NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

ALBERT LEMBO, PETITIONER, v. VICTORY PIECE DYEING COMPANY, RESPONDENT.

For the petitioner, *Nathan Rabinowitz.*

For the respondent, *Richard W. Baker.*

\*　　\*　　\*　　\*　　\*　　\*　　\*

2. That the petitioner was employed by the respondent as a dry-room helper, on or about November 16th, 1927, and that he continued in such employment up to December 16th, 1927; that his duties consisted of working in a dry-room, opening up bundles of piece silk to place in a dry-box.

3. That petitioner at the time of the injury was a minor of the age of fifteen years, and received for his services wages amounting to $14 per week.

4. That on the 16th day of December, 1927, the petitioner sustained personal injuries as a result of an accident; that said accident arose out of and in the course of petitioner's employment, which employment was contrary to the provisions of the laws of 1924, chapter 159, page 360, which provides that if a minor is employed under the age of sixteen years without an age or schooling certificate or age and working certificate, a compensation benefit shall be payable to the employe, which shall be double the amount payable under schedules provided in paragraphs eleven and twelve of the Workmen's Compensation act. The testimony further developed that the character of employment of the petitioner

was contrary to the provisions of the statute relating to factories and workshops, which provides that no minor under the age of sixteen years of age shall be employed, permitted or suffered to work in any capacity in, about or in connection with any position in which dangerous or poisonous acids are used. The petitioner testified that he was employed at first in a dry-room, which work consisted of opening up bundles of piece silk to place in a dry-box, and that his foreman was Mr. Frank Perotti, under whose supervision and direction the petitioner was required to work. On December 16th, 1927, the petitioner testified he was told to go into the chemical room or laboratory for the purpose of assisting another worker in using a pump for the purpose of transferring certain chemicals from one drum to another drum, and that while so doing some chemical spurted into the petitioner's left eye; that when Mr. Rocco Nazzaro, the chemist in charge of the laboratory, came into the room a few moments later, petitioner informed Mr. Nazzaro of what had happened and petitioner further informed his foreman, Mr. Frank Perotti, about the accident, and petitioner was instructed by the chemist, Mr. Nazzaro, to wash his eye with cold water. The petitioner was under the impression that the liquid got into his eye through a leak in the pump and there is a discrepancy in the petitioner's testimony as to the manner in which the chemical substance got into his eye. The petitioner stated that it came from the pump when the handle suddenly flew back and then said that he did not know where it came from, but the fact remains that some chemical substance actually got into his eye while he was working in the laboratory. I am particularly impressed with this fact in view of the testimony of Mr. Nazzaro, who was a witness called on behalf of the respondent, who testified that the accident was reported to him within fifteen minutes after it happened and that he instructed petitioner to put some cold water on his eye. The fact of the occurrence of the accident was also verified by the foreman, Mr. Frank Perotti. The petitioner testified that upon his return home he obtained some eye relief from a drug store and that he felt a constant burning

sensation. That he did not disclose the fact of his accident to his father because he was working contrary to his father's wishes inasmuch as his father wanted him to continue going to school. He was obliged to use dark glasses and then the condition became so acute that he was obliged to quit work on January 6th, 1928. The petitioner thereupon was ordered by the respondent to be examined by Dr. Hennion, an eye specialist, who testified to the effect that the petitioner gave him a history of having sustained an accident and the petitioner then went to Dr. Eugene Sturchio, to whom he gave a history of his case and who gave him injections and treatments to his eye. The petitioner testified that his eyes were in perfect condition prior to the accident and this was corroborated by members of his family. The testimony of Dr. Eugene Sturchio, eye specialist, connected with the Essex County General Hospital, showed that he examined petitioner in January, 1928, and that he found an abrasion of the cornea and an acute iritis condition; that he treated petitioner for three weeks with vaccine and that he operated on him at his home and that he opened the corneal tissue and emptied the anterior chambers; that in the opinion of Dr. Sturchio the condition from which the petitioner was suffering was due to traumatism and was due to the accident, and that the last time he treated him was approximately the 15th of May, 1928, when the limit of treatment was reached; that he saw him again on February 19th, 1929, and that petitioner was still suffering and that in his opinion the petitioner has suffered a permanent loss of vision to the extent of ninety per cent. of the left eye. Under cross-examination Dr. Sturchio stated that after eliminating all natural causes to the condition he came to the conclusion that the condition from which the petitioner was suffering was due to trauma as given to him from the history of the case. From the foregoing testimony adduced before me, I am convinced that the said accident arose out of and in the course of petitioner's employment.

5. That respondent had actual knowledge of the occurrence of said injuries.

6. That as a result petitioner received Kerititis and an acute iritis of the left eye, and that the said injuries caused the petitioner a temporary disability beginning January 7th, 1928, up to and including May 15th, 1928, and that he has a disability permanent in quality and partial in character which is as follows: Ninety per cent. permanent loss of the left eye.

7. That the petitioner incurred expenses for medical services amounting to the sum of $240.

8. I find, therefore, that the petitioner is entitled to compensation for a period of two hundred and fourteen weeks, representing double the compensation allowed by the Compensation act for permanent and temporary compensation, because of the illegal employment and in accordance with the laws of 1924, chapter 159, page 360, at the rate of $9.33 per week.

9. The legal adviser of the petitioner is entitled to compensation in addition to his costs allowed by law in the sum of $300, to be paid in the following manner: $150 payable by the petitioner and $150 payable by the respondent.

10. Costs will be allowed the petitioner.

\*        \*        \*        \*        \*        \*        \*

JOHN J. STAHL,
*Referee.*